**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SAMANTHY BROOKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-3097 |
| | § | |
| HOUSTON INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Samanthy Brooks sued her employer, the Houston Independent School District ("HISD"), claiming that she was retaliated against after she complained that a supervisor made racist statements. HISD moves for summary judgment, arguing that the undisputed facts show that the personnel actions Brooks challenges were due to problems in her job performance and were not retaliatory, as a matter of law. (Docket Entry No. 22). Brooks responded, and HISD replied. (Docket Entry Nos. 38, 47). The court heard argument on the motion on December 15, 2014. (Docket Entry No. 52). Based on the pleadings; the motion, response, and reply; the record; the applicable law; and the parties' arguments, the court grants HISD's motion for summary judgment. Final judgment is entered by separate order.

The reasons for this ruling are explained below.

**I.      Background**

The relevant facts are largely undisputed, and no material facts are disputed. Brooks has worked at HISD as a food server in different schools since 1994. (Docket Entry No. 38, Ex. A, Brooks Depo., p. 10). She is the primary caretaker for her 15-year-old grandson, who has attention

1

deficit disorder. (Docket Entry No. 38, Ex. B, Brooks Affidavit, ¶¶ 5–6). Brooks prefers to be assigned to the school that her grandson attends because he requires "constant care and attention." (Docket Entry No. 38, pp. 2–3). In 2010 and 2011, Brooks worked at Welch Middle School, where her grandson was a student. (Docket Entry No. 38, Ex. B, Brooks Affidavit, ¶¶ 10, 32–34). Her supervisor at Welch was Annie Marshall, who, like Brooks, is African-American. (Docket Entry No. 22, Ex. B, Welch Affidavit, at ¶ 5).

Welch's cafeteria had operational and financial problems. In August 2011, HISD brought in area manager Patrice Dauge to address those problems. (*Id.*). At a staff meeting in December 2011, Dauge, who is white, told the Welch Middle School food servers, all African-American or Hispanic, that "you people" should "shut up" and listen to their supervisors. (Docket Entry No. 38, Ex. B, Brooks Depo., pp. 56, 64). On another occasion, Dauge told Brooks a story about his family. (*Id.* at pp. 67, 263). Brooks thought that Dauge's statements to the employees and the story he told her were racist. She complained to HISD and, later, to the EEOC. (*Id.* at p. 32; Docket Entry No. 22, Ex. A-1). Dauge was aware of Brooks's complaints. (Docket Entry No. 38, Ex. E, Guice Depo., p. 21).

After Brooks complained, she was disciplined for a series of work rule infractions. This was not the first time Brooks had been disciplined for failing to follow HISD's rules. She had a history of disciplinary problems dating back to 2004, when she was fired for repeatedly being out of uniform, dealing with personal business at work, arriving late for her shift, and being "insubordinate." (Docket Entry No. 22, Ex. A-9). Brooks appealed and was reinstated with a demotion. (*Id.*). In September 2010, Brooks was disciplined again for angrily confronting one of her grandson's teachers. (Docket Entry No. 22, Ex. A-3). In 2011, Marshall orally counseled

Brooks about her tardiness, wearing clothes that did not follow HISD's uniform rules, using her cellphone in violation of HISD's rules, and profanity that again violated HISD's conduct rules. (Docket Entry No. 22, Ex. F, Marshall Affidavit, ¶ 2). Marshall did not give Brooks a written disciplinary warning.

In October 2011, Marshall gave Brooks a generally positive performance review. (*Id.*). The evaluation rated Brooks as "exceeding evaluations" in most categories, but gave her lower reviews in others, including improper dress and "language and hostile behaviors." (Docket Entry No. 38, Ex. D-1).

In February 2012, after Brooks had complained about Dauge, she was disciplined by Inman Ekwere, who had replaced Marshall. Ekwere, who is African-American, issued Brooks a written reprimand for coming to work late, using profanity, having a hostile attitude, and using her personal cell phone during working hours, all against HISD's rules. (Docket Entry No. 22, Ex. B-2; Ex. B-4).

In this lawsuit, Brooks alleges that Dauge either issued the disciplinary write-ups himself or caused others to do so. She testified in her deposition and affidavit that two weeks after her complaints, Dauge told her that he would make her life a "living hell" if she kept fighting him. She testified that at a disciplinary conference in February 2012, Dauge told her that "if you stop fighting me, this will all go away." (Docket Entry No. 38, Ex. B, Brooks Affidavit, ¶ 31). She testified that three days later, Dauge told her that she was being suspended without pay pending another disciplinary conference because of repeated tardiness and a hostile attitude, then said, "it was nice knowing you," and left the room. (Docket Entry No. 38, Ex. B, Brooks Affidavit, ¶¶ 27, 32; Ex. A, Brooks Depo., pp. 64–67).

Brooks's February 2012 disciplinary write-ups resulted in a 20-day suspension without pay

3

and a transfer to the cafeteria at Tinsley Elementary School. Mark Welch, the General Manager of Operations for HISD's Food Services Department, made the decision to suspend and transfer Brooks. Welch testified, and there is no controverting evidence, that when he did so, he did not know about her complaints about Dauge. (Docket Entry No. 22, Ex. B, Welch Affidavit, ¶¶ 8–12).

At Tinsley Elementary, Brooks had different supervisors. The record contains no evidence that any of those supervisors knew that she had complained about Dauge's comments to her and others. At Tinsley Elementary, Brooks again received disciplinary write-ups for violating the rules on uniforms and cell-phone use. She also received a disciplinary write-up for mishandling food. (Docket Entry No. 22, Ex. B-4; Ex. I, Foster Affidavit, ¶ 9; Ex. I-1).

After working only two weeks at Tinsley Elementary, Brooks went on medical leave. She initially submitted doctors' notes to explain why. But starting on April 5, 2012, Brooks was absent without medical justification, contrary to HISD's rules. (Docket Entry No. 22, Ex. B, Welch Affidavit, ¶ 13; Ex. I, Foster Affidavit, ¶ 10; Ex. I-2). Tinsley Elementary area manager Nancy Montalbo scheduled a "conference for the record" with Brooks to discuss her unauthorized absences. (Docket Entry No. 22, Ex. B-5). Brooks submitted a new doctor's note before the scheduled conference, and HISD cancelled it. (Docket Entry No. 22, Ex. I, Foster Affidavit, ¶ 10).

Brooks was absent on medical leave through August 2012, when the new school year started. In August, HISD could not locate any records explaining Brooks's absence, and scheduled another "conference for the record" with her. (Docket Entry No. 22, Ex. A-12). Brooks did not attend the conference or explain her absence.

Welch had learned about Brooks's complaints against Dauge in mid-April 2012. He decided in August 2012 to fire her, after she failed to attend the scheduled conference. (Docket Entry No.

4

22, Ex. B, Welch Affidavit, ¶ 14).  Brooks met with HISD on September 13 and provided records explaining why she had been on medical leave.  HISD concluded that it had lost or mishandled the documents Brooks had submitted earlier.  On September 17, 2012, Welch reinstated Brooks with back pay.  (*Id.*).

Brooks returned to work in September 2012 at a new school.  She continued to have disciplinary problems there, for food-safety violations and interfering with an investigation.  She was transferred to a fourth school in May 2013.  At that school, she was disciplined for tardiness.  There is no evidence that the supervisors at either school knew of her earlier complaints against Dauge.

Brooks sued HISD in October 2013, alleging race and disability discrimination, hostile work environment, and ADA and Title VII retaliation.  After discovery, HISD moved for summary judgment on all Brooks's claims.  In her response, Brooks made clear that she has abandoned all of her claims except retaliation under Title VII.  At the December 15, 2014 hearing, Brooks clarified that she was pursuing only retaliation claims based on the events before May 2012, when Dauge left HISD, and based on the (rescinded) notice of termination she received in August 2012.

## II.     The Legal Standards

### A.     Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial

burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B. Title VII Retaliation

Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (1994). The *McDonnell Douglas* framework applies to Title VII retaliation claims. *See Haire v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013). Under that framework, the employee's ultimate burden is to prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose. The elements of a *prima facie* showing of retaliation are that: (1) the plaintiff engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *See Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to proffer a legitimate rationale for the underlying employment action. If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's stated reason for the employment action was a pretext for retaliation. *Id.* The standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred "but for" her protected activity. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013); *Septimus v. Univ. of Houston*, 399 F.3d 601 (5th Cir. 2005).

Brooks's complaints to HISD in December 2011, January 2012, and February 2012, and the EEOC charges she filed in March 2012 and August 2012, were protected activities. Dauge knew about the complaints and charges Brooks made against him. In May 2012, Dauge left HISD. (Docket Entry No. 22, Ex. E, Guice Depo., p. 21). Welch learned about Brooks's complaints and charges in April 2012. (*Id.*; Docket Entry No. 22, Ex. B, Welch Affidavit, ¶ 12). Brooks stated at the December 15, 2014 hearing that she does not claim that any other decisionmaker knew about her protected activities.

Brooks alleges that she was subjected to the following adverse employment actions: hostility, threats, and "false disciplinary write-ups" by Dauge; suspension and transfer; probation; lost wages; and "false termination" by Welch and, directly or indirectly, by Dauge. (Docket Entry No. 38). An adverse employment action must be one that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006).

"Close timing between an employee's protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a *prima facie* case of retaliation." *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 Fed. App'x 447, 454 (5th Cir. 2013). But when temporal proximity is the only evidence of causation, the proximity must be "very close." *Feist*, 730 F.3d at 455 (quoting *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)). The Fifth Circuit has found "for example, that a time lapse of up to four months may be sufficiently close, while a five month lapse is not close enough without other evidence of retaliation." *Id.* (internal quotations omitted).

Under the cat's-paw theory, an employer may be liable for retaliation even if there is no evidence of bias on the part of the final decisionmaker if that decisionmaker took into account a biased negative statement or evaluation about the plaintiff by someone not directly involved in the decision. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 131 S. Ct. 1186, 1193–94 (2011). A causal link between protected activity and an adverse employment action may be shown through proof that even if the ultimate decisionmaker did not have a retaliatory animus, an individual with a retaliatory motive influenced that decisionmaker, with the intent of causing an adverse employment action.

8

*Staub*, 131 S. Ct. at 1186; *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004). Absent evidence of such an influence or intent, there is no causal connection between protected activity and an adverse employment action if the decisionmaker was not aware of the employee's protected activity or made the decision without considering any information provided by the allegedly biased source. *See McLaurin v. City of Jackson Fire Dep't*, 217 Fed. App'x 287, 288 (5th Cir. 2006); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003).

Each of Brooks's claimed instances of retaliation is examined below in light of the applicable legal standards and the summary judgment evidence.

**III.    Analysis**

    **A.    The February 2012 Statements by Dauge**

Brooks claims that in February 2012, after she had filed her complaints against Dauge for racist statements, Dauge told her that he was "going to make her life a living hell," but that if she would stop fighting him, her disciplinary problems would go away. (Docket Entry No. 38, Ex. B, Brooks Affidavit, ¶ 31). Brooks also claims that Dauge said "it was nice knowing you," after telling her that she was scheduled for a disciplinary meeting. (*Id.*).

Threats of retaliation that do not significantly alter conditions of employment are generally not enough for a *prima facie* Title VII case. *See Mills v. S. Connecticut State Univ.*, 519 F. App'x 73, 76 (2d Cir. 2013) (verbal threats are not actionable retaliation); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (schedule changes and verbal threats are not materially adverse employment actions supporting a Title VII retaliation claim). Brooks has not identified or presented any evidence showing that Dauge's threats to make Brooks's life "a living hell" or his "it was nice knowing you" comment significantly altered the conditions of her

9

employment. Dauge's comments are not adverse employment actions and do not themselves support a retaliation claim, even if they indicate that Dauge was biased against Brooks.

### B. The February 2012 Disciplinary Write-Ups

Brooks alleges that Dauge and HISD retaliated against her by writing her up in February 2012. Brooks received two write-ups in February 2012 for tardiness, cell-phone use, poor time management, profanity, and a "hostile and aggressive communication style." (Docket Entry No. 22, Ex. B-2). The February 2012 disciplinary write-ups were issued by Ekwere, Brooks's supervisor. The write-ups included statements that Brooks had repeatedly used her cell phone in violation of HISD's rules; that she been late to work 13 times since January 2012; and that she had been warned about these performance problems but had failed to correct them. (*Id.*). There is no evidence that Dauge issued the write-ups, although he signed a February 2012 report as a witness to verify that Brooks had refused to acknowledge it. (*Id.*). There is also no evidence that Welch issued or had any involvement in issuing any of the write-ups.

Written reprimands or warnings, such as the write-ups at issue, generally are not adverse employment actions, particularly when they are issued in response to work-rule violations and do not dissuade the employee from pursuing complaints. *See Grice v. FMC Techs., Inc.*, 216 Fed. App'x 401, 407 (5th Cir. 2007) (written reprimands were not materially adverse, even if unjustified); *DeHart v. Baker Hughes Oilfield Ops., Inc.*, 214 Fed. App'x 437, 442 (5th Cir. 2007) (a written warning for insubordination, being argumentative, and excessive tardiness was not an adverse employment action); *see also Mitchell v. Snow*, 326 Fed. App'x 852, 856 (5th Cir. 2009) ("An employment review lower than [the plaintiff] expected would not have dissuaded a reasonable employee from asserting discrimination."). Disciplinary write-ups that are the basis for more serious

10

consequences may be adverse employment actions. *See Hernandez v. Sikorsky Support Servs., Inc.*, 495 Fed. App'x 435, 438 (5th Cir. 2012) (suggesting that a reprimand may be adverse if it results in changes to compensation, duties, or job title).

In this case, Brooks's disciplinary history, combined with the write-ups, contributed to her February 2012 probation, suspension, and transfer. The summary judgment evidence shows that the February 2012 write-ups are within the category of adverse employment actions.

Brooks argues that Dauge either issued the write-ups or caused Ekwere to issue them, invoking a cat's-paw theory. Dauge did not issue the February 2012 write-ups, but they were issued very soon after Brooks complained about his comments; he attended Brooks's disciplinary conferences; and he signed one of the write-ups as a witness. (Docket Entry No. 22, Ex. B-2; Ex. I-3). Dauge's involvement in the process shortly after Brooks's complaints allows the court to infer his involvement in the decision to discipline Brooks, and a causal link based on temporal proximity. Brooks has made a *prima facie* showing of retaliation based on the February 2012 write-ups.

HISD has provided legitimate, nonretaliatory reasons for the February 2012 disciplinary actions. Brooks committed the infractions and was disciplined according to HISD's rules. To survive summary judgment, Brooks must raise a factual dispute material to deciding whether the write-ups would have occurred but for her protected conduct. *See Nassar*, 133 S. Ct. at 2533; *Feist*, 730 F.3d at 454. She can do so "by producing circumstantial evidence sufficient to create a fact issue as to whether the employer's nondiscriminatory reasons are merely pretext for discrimination," *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005), or by demonstrating that the proffered reasons are false or "unworthy of credence." *Bourgeois v. Mississippi Valley State Univ.*, 507 Fed. App'x 386, 388 (5th Cir.) *cert. denied*, 134 S. Ct. 163 (2013) (quoting *Vaughn v.*

*Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011)); *see also Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002) (an employer's inconsistent explanations for its employment decisions at different times permits a jury to infer that the employer's proffered reasons are pretextual).

Brooks first argues that the write-ups were pretextual because she received a generally positive performance review in October 2011. Brooks's evaluation was performed by Marshall, who was replaced as Brooks's supervisor in December 2011. Marshall did not issue the write-ups, and they were based on conduct occurring after the evaluation period. (Docket Entry No. 22, Exs. B-2; B-4). Given the change in supervisor and the fact that the performance review was based on earlier conduct, no inference of pretext may be drawn from the earlier positive review. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1176 n. 5 (10th Cir. 2006) ("drawing an inference of pretext is even less permissible when a new supervisor is appointed, who is entitled to set his own standards and agenda"); *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002) ("Different supervisors may impose different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important."). And the evidence shows that despite the positive parts of the performance review, Marshall had orally reprimanded Brooks in 2011 for her tardiness, uniform violations, cell phone use, and profanity — the same problems that Brooks received written write-ups for the next year — and the review noted lower performance in some of these same areas. (Docket Entry No. 22, Ex. F, Marshall Affidavit, ¶ 2).

Brooks does not dispute the frequency or severity of her tardiness. She originally argued that Dauge had altered her time records to show that she was two to three hours late, but at the December 15, 2014 hearing, Brooks admitted that HISD's evidence that she was, on average, approximately 11 minutes late, was inconsistent with this allegation. No other evidence provides a basis for any

inference that Dauge changed Brooks's time records.

Brooks also argued that the write-up for tardiness was not justified because other employees were also frequently late. She points to an employee who was late 19 times for an average of 3 minutes in early 2012, an employee who was late 26 times for an average of 5 minutes, and an employee who was late 23 times for an average of 4 minutes. (Docket Entry No. 38, Ex. U; Ex. V; Ex. W). Brooks's time records for the same period show that she was late 29 times for an average of 11 minutes. (Docket Entry No. 38, Ex. T). The summary judgment evidence shows that Brooks was late more often, and more severely, than the other employees she cites as comparators. Because Brooks's admitted tardiness violated HISD's rules, justified the write-ups, and was worse than the comparators', Brooks has not raised a factual dispute material to determining whether the write-ups for tardiness were a pretext for retaliation. The undisputed summary judgment evidence shows that they were not.

Brooks claims that the write-ups she received for using her cell phone at work were not justified because on February 17, 2012, Dauge permitted her to use her phone. (Docket Entry No. 38 at p. 19). Brooks testified that on that day, Dauge asked her about why she was using her cell phone, and that he said "okay," after she explained. (Docket Entry No. 38, Ex. A, Brooks Depo., p. 96). She interpreted this response to mean that while Dauge had not specifically permitted her to use her phone, "[h]e didn't say not to either." (*Id.*).

HISD's rules explicitly tell employees that they cannot use their personal cell phones while working. Brooks had been informed about these rules and reprimanded for violating them on multiple occasions. (Docket Entry No. 22, Ex. B-2; Ex. D; Ex. F, Marshall Affidavit, ¶ 2; Ex. I-3). The summary judgment evidence does not raise a factual dispute material to determining whether

13

the write-ups Brooks received in February 2012 for using her cell phone were a pretext for retaliation. The undisputed summary judgment evidence shows that they were not a pretext.

Finally, Brooks claims the write-ups were pretextual because they were issued in violation of HISD's standard procedures. She claims that the write-ups falsely state that she received earlier warnings, and that the cafeteria manager, not Dauge, should have issued the notices. The summary judgment evidence shows that Dauge did not issue any of the write-ups, and that Brooks had received previous warnings. (Docket Entry No. 22, Ex. B-2; Ex. F, Marshall Affidavit, ¶ 2). There is no evidence that Ekwere knew of Brooks's protected activities, or that Dauge specifically intended to influence him in order to adversely affect Brooks's employment.

The summary judgment evidence shows that Brooks committed most, if not all, of the actions that she was disciplined for. It also shows that she received numerous oral and written warnings about her cell phone use, her tardiness, her uniform, and her language from multiple supervisors. Even if there were inaccuracies in the information, Brooks has not shown that they raise a factual dispute as to whether her write-ups for rule violations were a pretext for retaliation. The February 2012 write-ups were not unlawful retaliation.

### C. The February 2012 Suspension

On February 27, 2012, HISD suspended Brooks with pay pending an investigation of her conduct. (Docket Entry No. 38, Ex. N). She was reinstated 20 days later. Brooks argues that her suspension was retaliatory.

Suspension with pay, followed by reinstatement and no loss of benefits, is not an adverse employment action. *See Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 331–32 (5th Cir. 2009); *Breaux v. City of Garland*, 205 F.3d 150, 164 (5th Cir. 2000) (First Amendment retaliation);

*Brown v. City of Syracuse*, 673 F.3d 141, 144 (2d Cir. 2012); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) ("[A] suspension with pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action."). Even if Brooks's suspension was an adverse employment action, she has not raised a factual dispute as to whether HISD's legitimate nondiscriminatory reason for her suspension — her extensive disciplinary history and recent write-ups — was a pretext for retaliation. The summary judgment evidence shows that Brooks was written up for violating work rules, and that when Welch decided to suspend her, he did not know about the complaints she had made against Dauge. Because the write-ups were not retaliatory, the cat's-paw theory of causation is inapplicable. The February 2012 suspension was not retaliatory.

### D. The February 2012 Probation

In February 2012, Welch decided to place Brooks on probation. The decision was never implemented, and Brooks was not told about the decision. While Brooks claims that the probation was retaliatory, an action that the employee does not know about cannot dissuade that employee from making or supporting a charge of discrimination. *Cf. Burlington N.*, 548 U.S. at 69. And the evidence is undisputed that Welch did not know about Brooks's protected activity at the time. The unimplemented decision to place Brooks on probation is not an adverse employment action and does not support her retaliation claim.

### E. The March 2012 Transfer

Brooks claims that her transfer to Tinsley Elementary in March 2012 was retaliatory. Brooks was transferred at the same salary, but she was moved away from the school her grandson attended. She lost the opportunity to earn extra wages by working after school and on weekends. (Docket Entry No. 38, p. 21). While an employee's subjective preference for a position does not make a

transfer adverse, *see Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 485 (5th Cir. 2008), the lost opportunity to work after school and on the weekends at Tinsley Elementary made Brooks's position there objectively less desirable. The transfer was an adverse employment action.

Welch made the decision to transfer Brooks to Tinsley Elementary. Welch testified that he had no knowledge of Brooks's complaints against Dauge at the time. (Docket Entry No. 22, Ex. B, Welch Affidavit, ¶ 8). Brooks asserts a cat's-paw theory of causation, arguing that Dauge caused her to be transferred by giving her false and retaliatory disciplinary write-ups, which influenced Welch's decision. The summary judgment evidence shows that Dauge did not recommend the transfer. Instead, Welch made the decision based on Brooks's disciplinary history and complaints he had received about her. (*Id.* at ¶¶ 8–10). The undisputed evidence shows that Brooks received write-ups for violations of work rules, and that the write-ups were not a pretext for retaliation. Brooks's challenge to her resulting transfer fails.

### E.     The March 2012 Write-Ups

In March 2012, Brooks's supervisors at Tinsley Elementary wrote her up for being out of uniform (she was wearing shoes and jewelry that violated HISD's rules), for using her cell phone, and for violating the rule requiring food-service employees to wear gloves when handling food. (Docket Entry No. 22, Ex. B-4).

There is no evidence that when Carla Johnson, Brooks's manager at Tinsley Elementary, issued the disciplinary write-ups, Johnson had any information about Brooks's earlier complaints against Dauge. To show a causal link for the March 2012 write-ups, Brooks asserts only that Johnson told her that she was told to "watch out" for Brooks. (Docket Entry No. 38, Ex. B, Brooks Affidavit, ¶ 36). Brooks does not say who told Johnson to "watch out" for her. And the comment

16

does not support a cat's-paw theory, given Brooks's history of disciplinary problems at Welch Middle School in 2011 and 2012 and at other schools before that. There is no evidence that would allow a reasonable fact finder to infer that Johnson was influenced by Dauge. (*See* Docket Entry No. 22, Ex. I, E-mail from area manager Nancy Montalbo to Tesha Foster ("I purposefully did not ask you for any documentation on Mrs. Sam Brooks nor did I tell my manager much about the new employee she would be receiving.")). Brooks has not made a *prima facie* showing of retaliation based on the March 2012 write-ups because she has not identified or presented evidence indicating any causal link to her protected activity.

> **F.  The April 2012 "False" Termination and the August 2012 Rescinded Termination**

Brooks claims that she suffered a retaliatory "false termination" in April 2012, when HISD asked her to appear at a conference for the record to discuss concerns that she had abandoned her job. Brooks provided a doctor's note, and HISD cancelled the conference. Brooks was not terminated at that time. Scheduling the conference was not an adverse employment action.

Brooks also claims that she was retaliated against when HISD "falsely terminated her" in August 2012. On August 27, 2012, while Brooks was still out on medical leave, HISD sent her a letter asking her to appear for a conference on August 29 to discuss whether she had abandoned her post. Brooks received the notice on August 28, 2012. (Docket Entry No. 38, Ex. C, Foster Depo., p. 57). HISD's procedures generally provide employees 48 hours notice before such a conference. (*Id.* at pp. 57–59). The delayed notice of the disciplinary conference does not make it an adverse employment action. Brooks does not dispute that she received notice of the conference before it occurred. Brooks did not appear at the conference, and HISD fired her. HISD learned two weeks later that Brooks had a medical justification for her absence, but that the papers Brooks provided had

been mishandled or lost. HISD reinstated Brooks at the same level. She lost no benefits or pay. Because the August 2012 decision to terminate her was rescinded with no loss of pay, it is not an adverse employment action.

And even if Brooks could show that her two-week termination was an adverse employment action, the record does not support an inference of causation. The undisputed evidence shows that HISD had lost or misplaced the documents explaining her absence, and that Brooks failed to attend the scheduled conference. There is no basis to infer that retaliation based on Brooks's months-old complaints against a supervisor who no longer worked at HISD was the "but for" reason for the decision to terminate her, particularly given the decision to reinstate.

### G. The Lost Pay Claims

Brooks claims that she had additional responsibilities in December 2011 and January 2012 while the head of her group was absent, but that she was not paid extra salary. She claims that HISD's failure to pay more was retaliatory.

The summary judgment evidence supports HISD's stated reason for denying Brooks pay at a managerial rate. Tracy Amadi, not Brooks, was the interim head of the group, and Brooks did not take on her former manager's duties. (Docket Entry No. 22, Ex. B, Welch Affidavit, ¶ 15; Ex. B-6). The evidence shows that Brooks did not have the computer access necessary to perform the duties she claims to have been assigned. (Docket Entry No. 22, Ex. B, Welch Affidavit, ¶ 15). Brooks has not identified or presented summary judgment evidence supporting an inference that HISD's stated reason was a pretext for retaliation.

Brooks also claims that HISD's refusal to pay her for April 5, 2012, is evidence of retaliation. Brooks was on medical leave from March 27 to April 4, 2012. She did not return on

April 5, but instead saw a doctor, who gave her another note. She gave this note to HISD on April 6. HISD paid Brooks for all of the days she was out sick, except for April 5. (Docket Entry No. 22, Ex. I-2). HISD did not pay her for that day because she was absent without contemporaneous medical justification, which HISD's rules require. Brooks has not pointed to or submitted evidence showing that HISD's stated reason for not paying her for that day was false or a pretext for retaliation.

**IV.     Conclusion**

HISD's motion for summary judgment, (Docket Entry No. 22), is granted. Final judgment is entered by separate order.

SIGNED on January 20, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge